Danielle L. Perry (SBN 292120)
dperry@wbmllp.com
Gary E. Mason (*pro hac vice forthcoming*)
gmason@wbmllp.com
**WHITFIELD BRYSON & MASON, LLP**
5101 Wisconsin Ave. NW, Ste. 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELA HERNANDEZ, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>PIH HEALTH, INC.,<br><br>     Defendant. | **CASE NO. 2:20-cv-1662**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **NEGLIGENCE**<br>2. **INTRUSION INTO PRIVATE AFFAIRS**<br>3. **BREACH OF EXPRESS CONTRACT**<br>4. **BREACH OF IMPLIED CONTRACT**<br>5. **NEGLIGENCE PER SE**<br>6. **BREACH OF FIDUCIRY DUTY**<br>7. **VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT, Cal. Civ. Code § 56, et seq.**<br>8. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200, et seq.** |

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

1. Plaintiff DANIELA HERNANDEZ, individually, and on behalf of all others similarly situated, brings this action against Defendant PIH HEALTH, INC. ("PIH" or "Defendant") to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record.

## JURISDICTION AND VENUE

2. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Plaintiff asserts claims that necessarily raise substantial disputed federal issues under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Federal Trade Commission Act (15 U.S.C. § 45) and the Gramm-Leach-Bliley Act (15 U.S.C. § 6801). *See, e.g.*, *infra* at ¶ 39.

3. Defendant PIH has sufficient minimum contacts in California, as it is a domestic non-profit corporation in good standing, organized under the laws of the State of California, with a majority (if not all) of its business in the State of California, thus rendering the exercise of personal jurisdiction by this Court proper and necessary.

4. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to these claims occurred in this District.

## NATURE OF THE ACTION

5. This class action arises out of the recent cyberattack and data breach ("Data Breach") at PIH's medical facilities. As a result of the Data Breach, Plaintiff and approximately 199,548 Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack. In

addition, Plaintiff's and Class Members' sensitive personal information—which was entrusted to PIH, its officials and agents—was compromised and unlawfully accessed due to the Data Breach. Information compromised in the Data Breach includes names, demographic information, dates of birth, Social Security numbers, driver's license or identification card numbers, employment information, health insurance information, medical information, other protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and additional personally identifiable information ("PII") and protected health information ("PHI") that Defendant PIH collected and maintained (collectively the "Private Information").

6.     Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that they collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

7.     Defendant maintained the Private Information in a reckless manner.  In particular, the Private Information was maintained on Defendant PIH's computer network in a condition vulnerable to cyberattacks, including the phishing incident that resulted in access to PIH employee email. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

8.     In addition, PIH and its employees failed to properly monitor the computer network and systems that housed the Private Information.  Had PIH properly monitored its property, it would have discovered the intrusion sooner.

CLASS ACTION COMPLAINT

9. Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant PIH collected and maintained is now in the hands of data thieves.

10. Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, e.g., opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' health information to target other phishing and hacking intrusions based on their individual health needs, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

11. As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

12. Plaintiff and Class Members may also incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

13. By her Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

14. Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

15. Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct, and asserting claims for: (i) negligence, (ii)

5

intrusion into private affairs, (iii) negligence *per se*, (iv) breach of express contract, (v) breach of implied contract, (vi) breach of fiduciary duty, (vii) deprivation of rights possessed under the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56, *et seq.*), and (viii) deprivation of rights possessed under the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) and California Consumer Privacy Act (Cal. Civ. Code § 1798.100, *et seq.*).

## PARTIES

16.    Plaintiff DANIELA HERNANDEZ is, and at all times mentioned herein was, an individual citizen of the State of California residing in the City of East Los Angeles.

17.    Defendant PIH is a non-profit domestic corporation organized under the laws of the State of California with its principal place of business at 12401 Washington Blvd., Whittier, CA 90602.

## DEFENDANT'S BUSINESS

18.    Defendant PIH is a nonprofit, regional healthcare network in the State of California with two hospitals, numerous outpatient medical offices, a multispecialty medical (physician) group, home healthcare services and hospice care, as well as heart, cancer and emergency services.

19.    Defendant PIH is in the business of rendering healthcare services, medical care, and treatment for the greater Los Angeles area, including LA and Orange counties.

20.    In the ordinary course of receiving treatment and health care services from Defendant PIH, patients are required to provide Defendant with sensitive, personal and private information such as:

- Name, address, phone number and email address;
- Date of birth;
- Demographic information;
- Social Security number;

6

- Information relating to individual medical history;
- Insurance information and coverage;
- Information concerning an individual's doctor, nurse or other medical providers;
- Photo identification;
- Employer information, and;
- Other information that may be deemed necessary to provide care.

21.    Defendant PIH also gathers certain medical information about patients and creates records of the care it provides to them.

22.    Additionally, Defendant PIH may receive private and personal information from other individuals and/or organizations that are part of a patient's "circle of care", such as referring physicians, patients' other doctors, patient's health plan(s), close friends, and/or family Members.

23.    All of Defendant's employees, staff, entities, clinics, sites, and locations may share patient information with each other for various purposes without a written authorization, as disclosed in the PIH's Privacy Policy (the "Privacy Notice").[1]   The current privacy notice has an effective date of September 23, 2013.

24.    The Privacy Notice is provided to every patient upon request and is posted on Defendant's website.   Defendant also notes that it is required by law to make "good faith efforts to obtain written acknowledgement of receipt of this Notice from you; maintain records of the signed receipts, and document the failure to obtain a receipt."[2]

25.    Because of the highly sensitive and personal nature of the information Defendant acquires and stores with respect to its patients, PIH promises to, among other things: A) protect "medical information about you;" B) "[m]ake sure that medical information that identifies you is kept private;" C) "[g]ive you notice of our

---

[1] https://www.pihhealth.org/patients-visitors/privacy/
[2] *Id.*

CLASS ACTION COMPLAINT

legal duties and privacy practices with respect to medical information about you;" D) "[f]ollow the terms of the notice that is currently in effect;" E) to make any other uses and disclosures of medical information not covered by the Privacy Notice or the laws that apply to use "only with written permission," and; F) to notify patients in the event of a breach of unsecured medical information."[3]

## THE CYBERATTACK AND DATA BREACH

26.   On June 18, 2019, PIH learned that certain PIH employee email accounts had potentially been accessed without authorization as a result of a targeted email phishing campaign.[4]

27.    PIH launched an investigation and engaged independent cybersecurity experts to provide assistance.

28.   On October 2, 2019, as a result of this investigation, PIH learned that certain employee email accounts were accessed without authorization between June 11, 2019 and June 18, 2019 as a result of the above-referenced phishing campaign.

29.   Upon receipt of confirmation of unauthorized access to certain PIH employee email accounts on October 2, 2019, over 3 months after the Data Breach was discovered, PIH engaged the same independent cybersecurity experts to determine whether the accessed employee email accounts contained personal information and/or protected health information that may have been subject to unauthorized access as a result.

30.   On November 12, 2019, as a result of that review, PIH learned that both personal information and Protected Health Information (PHI) belonging to certain current and former patients was contained within the accessed email accounts.

31.   The compromised email accounts contained messages and email attachments that included Private Information of at least 199,548 patients.

---

[3] *Id.*

[4] https://www.pihhealth.org/about/data-security-incident/

CLASS ACTION COMPLAINT

32.     Plaintiff believes her Private Information was stolen (and subsequently sold) in the Data Breach.  While PIH stated it was "not aware" that the Private Information involved in this incident had been misused, it could not rule out the possibility.

33.     Despite being unable to rule out that the personal information of Plaintiff and the Class Members was not compromised, PIH did not begin to notify affected patients until January 10, 2020, nearly seven (7) months after the Data Breach was first discovered.

34.     Defendant had obligations created by HIPAA, contract, industry standards, common law, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

35.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

36.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

37.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack.  As one report explained, "[e]ntities like smaller municipalities and ***hospitals*** are attractive to ransomware criminals…because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[5]

_____

[5] https://www.law360.com/consumerprotection/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware?nl_pk=3ed44a08-fcc2-4b6c-89f0-aa0155a8bb51&utm_source=newsletter&utm_medium=email&utm_campaign=consumerprotection (emphasis added).

38.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant PIH.

39.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard the PIH computer systems and data.  Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.     Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.     Failing to adequately protect patients' Private Information;

c.     Failing to properly monitor its own data security systems for existing intrusions;

d.     Failing to ensure that its vendors with access to its computer systems and data employed reasonable security procedures;

e.     Failing to ensure the confidentiality and integrity of electronic PHI it created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

f.     Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

g.     Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

h.     Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

CLASS ACTION COMPLAINT

i.    Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

j.    Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

k.    Failing to ensure compliance with HIPAA security standard rules by its workforces in violation of 45 C.F.R. § 164.306(a)(4);

l.    Failing to train all Members of its workforces effectively on the policies and procedures regarding PHI as necessary and appropriate for the Members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b); and/or

m.    Failing to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR 164.304 definition of encryption).

40.    As the result of computer systems in dire need of security upgrading, inadequate procedures for handling emails containing viruses or other malignant computer code, and employees who opened files containing the virus or malignant code that perpetrated the cyberattack, Defendant PIH negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

41.    Accordingly, as outlined below, Plaintiff's and Class Members' daily lives were severely disrupted. What's more, they now face an increased risk of fraud and identity theft. Plaintiff and the Class Members also lost the benefit of the bargain they made with Defendant.

CLASS ACTION COMPLAINT

## <u>CYBERATTACKS AND DATA BREACHES CAUSE DISRUPTION AND PUT CONSUMERS AT AN INCREASED RISK OF FRAUD AND IDENTIFY THEFT</u>

42.     Cyberattacks and data breaches at medical facilities like PIH are especially problematic because of the disruption they cause to the medical treatment and overall daily lives of patients affected by the attack.

43.     Researchers have found that at medical facilities that experienced a data security incident, the death rate among patients increased in the months and years after the attack.[6]

44.     Researchers have further found that at medical facilities that experienced a data security incident, the incident was associated with deterioration in timeliness and patient outcomes, generally.[7]

45.     Cyberattacks such as one at issue here are considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule:

> A breach under the HIPAA Rules is defined as, "...the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI."

See 45 C.F.R. 164.40[8]

46.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GOA Report") in which it noted that victims of

---

[6] *See* https://www.pbs.org/newshour/science/ransomware-and-other-data-breaches-linked-to-uptick-in-fatal-heart-attacks

[7] *See* https://onlinelibrary.wiley.com/doi/full/10.1111/1475-6773.13203.

[8] *Id.*

CLASS ACTION COMPLAINT

identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[9]

47.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[10]

48.    Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

49.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name. A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[11]

---

[9] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last visited Apr. 12, 2019) ("GAO Report").

[10] *See* https://www.identitytheft.gov/Steps (last visited April 12, 2019).

[11] "Credit Card and ID Theft Statistics" by Jason Steele, 10/24/2017, at: https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php (last visited June 20, 2019).

---

13



50.     What's more, theft of Private Information is also gravely serious. PII/PHI is a valuable property right.[12] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences.  Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

51.     Theft of PHI, in particular, is gravely serious: "A thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report

---

[12] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

CLASS ACTION COMPLAINT

may be affected."[13] Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII/PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves.  Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

52.    It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

53.    Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

54.    There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

---

[13] *See* Federal Trade Commission, Medical Identity Theft, http://www.consumer.ftc.gov/articles/0171-medical-identity-theft (last visited March 27, 2014).

CLASS ACTION COMPLAINT

55.    Medical information is especially valuable to identity thieves. According to account monitoring company LogDog, coveted Social Security numbers were selling on the dark web for just $1 in 2016 – the same as a Facebook account. That pales in comparison with the asking price for medical data, which was selling for $50 and up.[14]

56.    Because of its value, the medical industry has experienced disproportionally higher numbers of data theft events than other industries. Defendant therefore knew or should have known this and strengthened its data systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

### PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

57.    To date, Defendant has done absolutely nothing to provide Plaintiff and the Class Members with relief for the damages they have suffered as a result of the Data Breach.

58.    To date, Defendant has not even offered Plaintiff and the Class Members any free credit monitoring, identity theft protection, or identity restoration services.

59.    Instead, Defendant actively encouraged Plaintiff and the Class Members to spend their personal time dealing with the aftereffects of the Data Breach, suggesting that Plaintiff and Class Members "review your debit and credit card statements carefully in order to identify any unusual activity," and to "consider placing a fraud alert on your credit report."[15]

60.    Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

61.    Plaintiff's PII and PHI was compromised as a direct and proximate result of the Data Breach.

---

[14] https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content
[15] https://www.pihhealth.org/about/data-security-incident/

CLASS ACTION COMPLAINT

62.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

63.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

64.     Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

65.     Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

66.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

67.     Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

68.     Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members overpaid for a service that was intended to be accompanied by adequate data security but was not.  Part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of Defendant PIH's computer property and Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class Members did not get what they paid for.

69.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial and medical accounts and records for misuse.

70.     Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a.     Finding fraudulent charges;

b.     Canceling and reissuing credit and debit cards;

c.     Purchasing credit monitoring and identity theft prevention;

d.     Addressing their inability to withdraw funds linked to compromised accounts;

e.     Taking trips to banks and waiting in line to obtain funds held in limited accounts;

f.     Placing "freezes" and "alerts" with credit reporting agencies;

g.     Spending time on the phone with or at a financial institution to dispute fraudulent charges;

h.     Contacting financial institutions and closing or modifying financial accounts;

i.     Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

j.     Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k.     Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

71.     Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of

CLASS ACTION COMPLAINT

Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is password-protected.

72.     Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information—which contains the most intimate details about a person's life, including what ailments they suffer, whether physical or mental—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

73.     Plaintiff and the Class Members were also injured in that they were deprived of rights they possess under the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) and California Consumer Privacy Act (Cal. Civ. Code § 1798.100, et seq.) to keep their Private Information secure and confidential.

74.     As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

**CLASS ACTION ALLEGATIONS**

75.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated ("the Class").

76.     Plaintiff propose the following Class definition, subject to amendment as appropriate:

> All persons who utilized Defendant PIH's services and whose Private Information was maintained on Defendant PIH's email and computer system that was compromised in the Data Breach.

77.     Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of

Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

78.   <u>Numerosity</u>.  The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of approximately 199,548 patients of Defendant PIH whose data was compromised in Data Breach.

79.   <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.   Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations including, *e.g.*, HIPAA;

d.   Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.   Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f.   Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g.   Whether computer hackers obtained Class Members' Private Information in the Data Breach;

h.   Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

CLASS ACTION COMPLAINT

i.      Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j.      Whether Defendant's conduct was negligent;

k.      Whether Defendant's conduct was *per se* negligent;

l.      Whether Defendant's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

m.     Whether Defendant violated the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*.);

n.      Whether Defendant violated California's California Confidentiality of Medical Information Act (Cal. Civ. Code § 56, *et seq*);

o.      Whether Defendant failed to provide notice of the Data Breach in a timely manner, and;

p.      Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

80.    <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class member, was compromised in the Data Breach.

81.    <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class.  Plaintiff's Counsel are competent and experienced in litigating Class actions.

82.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

CLASS ACTION COMPLAINT

83.    <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

84.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

**CAUSES OF ACTION**

**<u>FIRST COUNT</u>**

**NEGLIGENCE**

**(On Behalf of Plaintiff and All Class Members)**

85.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 84 above as if fully set forth herein.

86.    Defendant required Plaintiff and Class Members to submit non-public personal information in order to obtain medical services.

87.    By collecting and storing this data in its computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft.  Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in

a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

88.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

89.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its client patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law.  Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

90.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1).  Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

91.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

92.    In addition, Cal. Civ. Code §1798.81.5 requires Defendant to take reasonable steps and employ reasonable methods of safeguarding the PII of Class Members who are California residents.

CLASS ACTION COMPLAINT

93.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

94.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.      Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.      Failing to adequately monitor the security of their networks and systems;

c.      Failure to periodically ensure that their email system had plans in place to maintain reasonable data security safeguards;

d.      Allowing unauthorized access to Class Members' Private Information;

e.      Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

f.      Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

95.     It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members.  Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the medical industry.

96.     It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

97.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach

98.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## **SECOND COUNT**

## **INTRUSION INTO PRIVATE AFFAIRS/INVATION OF PRIVACY**
## **(On Behalf of Plaintiff and All Class Members)**

99.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 84 as if fully set forth herein.

100.   California established the right to privacy in Article I, Section 1 of the California Constitution.

101.   The State of California recognizes the tort of Intrusion into Private Affairs, and adopts the formulation of that tort found in the Restatement (Second) of Torts, which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977).

102.   Plaintiff and Class Members had a reasonable expectation of privacy in the Private Information Defendant mishandled.

103.   Defendant's conduct as alleged above intruded upon Plaintiff's and Class Members' seclusion under common law.

104.   By intentionally failing to keep Plaintiff's and Class Members' Private Information safe, and by intentionally misusing and/or disclosing said information

25

to unauthorized parties for unauthorized use, Defendant intentionally invaded Plaintiff's and Class Members' privacy by:

    a.    Intentionally and substantially intruding into Plaintiff's and Class Members' private affairs in a manner that identifies Plaintiff and Class Members and that would be highly offensive and objectionable to an ordinary person; and

    b.    Intentionally publicizing private facts about Plaintiff and Class Members, which is highly offensive and objectionable to an ordinary person; and

    c.    Intentionally causing anguish or suffering to Plaintiff and Class Members.

105. Defendant knew that an ordinary person in Plaintiff's or a Class Member's position would consider Defendant's intentional actions highly offensive and objectionable.

106. Defendant invaded Plaintiff and Class Members' right to privacy and intruded into Plaintiff's and Class Members' private affairs by intentionally misusing and/or disclosing their Private Information without their informed, voluntary, affirmative, and clear consent.

107. Defendant intentionally concealed from Plaintiff and Class Members an incident that misused and/or disclosed their Private information without their informed, voluntary, affirmative, and clear consent.

108. As a proximate result of such intentional misuse and disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted. Defendant's conduct, amounting to a substantial and serious invasion of Plaintiff's and Class Members' protected privacy interests causing anguish and suffering such that an ordinary person would consider Defendant's intentional actions or inaction highly offensive and objectionable.

CLASS ACTION COMPLAINT

109.   In failing to protect Plaintiff's and Class Members' Private Information, and in intentionally misusing and/or disclosing their Private Information, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private. Plaintiff, therefore, seeks an award of damages on behalf of themselves and the Class.

### THIRD COUNT
### Breach of Express Contract
### (On Behalf of Plaintiff and All Class Members)

110.   Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 84above as if fully set forth herein.

111.   Plaintiff and Members of the Class allege that they entered into valid and enforceable express contracts, or were third party beneficiaries of valid and enforceable express contracts, with Defendant.

112.   The valid and enforceable express contracts that Plaintiff and Class Members entered into with Defendant include Defendant's promise to protect nonpublic personal information given to Defendant or that Defendant gathers on its own from disclosure.

113.   Under these express contracts, Defendant and/or its affiliated healthcare providers, promised and were obligated to: (a) provide healthcare to Plaintiff and Class Members; and (b) protect Plaintiff's and the Class Members' PII/PHI: (i) provided to obtain such healthcare; and/or (ii) created as a result of providing such healthcare.  In exchange, Plaintiff and Members of the Class agreed to pay money for these services, and to turn over their Private Information.

114.   Both the provision of healthcare and the protection of Plaintiff's and Class Members' PII/PHI were material aspects of these contracts.

115.   At all relevant times, Defendant expressly represented in its Privacy Notice that it would, among other things: A) protect "medical information about

CLASS ACTION COMPLAINT

you;" B) "[m]ake sure that medical information that identifies you is kept private;" C) "[g]ive you notice of our legal duties and privacy practices with respect to medical information about you;" D) "[f]ollow the terms of the notice that is currently in effect;" E) to make any other uses and disclosures of medical information not covered by the Privacy Notice or the laws that apply to use "only with written permission," and; F) to notify patients in the event of a breach of unsecured medical information."[16]

116. Defendant's express representations, including, but not limited to, express representations found in its Notice of Privacy Practices, formed an express contract requiring Defendant's to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII/PHI.

117. Consumers of healthcare value their privacy, the privacy of their dependents, and the ability to keep their PII/PHI associated with obtaining healthcare private. To customers such as Plaintiff and Class Members, healthcare that does not adhere to industry standard data security protocols to protect PII/PHI is fundamentally less useful and less valuable than healthcare that adheres to industry-standard data security. Plaintiff and Class Members would not have entered into these contracts with Defendant and/or its affiliated healthcare providers as a direct or third-party beneficiary without an understanding that their PII/PHI would be safeguarded and protected.

118. A meeting of the minds occurred, as Plaintiff and Members of the Class provided their PII/PHI to Defendant and/or its affiliated healthcare providers, and paid for the provided healthcare in exchange for, amongst other things, protection of their PII/PHI.

119. Plaintiff and Class Members performed their obligations under the contract when they paid for their health care services and provided their PII/PHI.

---

[16] https://www.pihhealth.org/patients-visitors/privacy/

CLASS ACTION COMPLAINT

120.   Defendant materially breached its contractual obligation to protect the nonpublic personal information Defendant gathered when the information was accessed and exfiltrated by unauthorized personnel as part of the Data Breach.

121.   Defendant materially breached the terms of these express contracts, including, but not limited to, the terms stated in the relevant Notice of Privacy Practices.   Defendant did not "maintain the privacy" of Plaintiff's and Class Members' PII/PHI as evidenced by its notifications of the Data Breach to Plaintiff and approximately 199,548 Class Members.  Specifically, Defendant did not comply with industry standards, or otherwise protect Plaintiff's and the Class Members' PII/PHI, as set forth above.

122.   The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

123.   As a result of Defendant's failure to fulfill the data security protections promised in these contracts, Plaintiff and Members of the Class did not receive the full benefit of the bargain, and instead received healthcare and other services that were of a diminished value to that described in the contracts.  Plaintiff and Class Members therefore were damaged in an amount at least equal to the difference in the value of the healthcare with data security protection they paid for and the healthcare they received.

124.   Had Defendant disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, neither the Plaintiff, the Class Members, nor any reasonable person would have purchased healthcare from Defendant and/or its affiliated healthcare providers.

125.   As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure, and publication of their PII/PHI, the loss of control of their PII/PHI, the imminent risk of suffering additional damages in the future, disruption of their medical care and

CLASS ACTION COMPLAINT

treatment, out-of-pocket expenses, and the loss of the benefit of the bargain they had struck with Defendant.

126.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

## FOURTH COUNT

### Breach of Implied Contract

### (On Behalf of Plaintiff and All Class Members)

127.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 84 above as if fully set forth herein.

128.    When Plaintiff and Class Members provided their Private Information to Defendant PIH in exchange for Defendant's services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

129.    Defendant solicited and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

130.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards.

131.    Class Members who paid money to Defendant reasonably believed and expected that Defendant would use part of those funds to obtain adequate data security.  Defendant failed to do so.

132.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.  Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of

CLASS ACTION COMPLAINT

its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

133.   Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

134.   Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

135.   As a direct and proximate result of Defendant's breaches of the implied contracts, Class Members sustained damages as alleged herein.

136.   Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

137.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## FIFTH COUNT

### Negligence *Per Se*

### (On Behalf of Plaintiff and All Class Members)

138.   Plaintiff re-allege and incorporate by reference Paragraphs 1 through 84 above as if fully set forth herein.

139.   Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

140.   Pursuant to HIPAA (42 U.S.C. § 1302d, et seq.), Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Private Information.

141.   Pursuant to HIPAA, Defendant had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals,

as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR 164.304 definition of encryption).

142.   Pursuant to the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), Defendant had a duty to protect the security and confidentiality of Plaintiff's and Class Members' Private Information.

143.   Defendant breached its duties to Plaintiff and Class Members under the Federal Trade Commission Act, HIPAA, and the Gramm-Leach-Bliley Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

144.   Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

145.   But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

146.   The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

147.   As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## **SIXTH COUNT**

### **Breach of Fiduciary Duty**

### **(On Behalf of Plaintiff and All Class Members)**

148.   Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 84 above as if fully set forth herein.

149.   In light of the special relationship between Defendant and Plaintiff and Class Members, whereby Defendant became guardians of Plaintiff's and Class Members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for the benefit of its patients, including Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' Private Information; (2) to timely notify Plaintiff and Class Members of a data breach and disclosure; and (3) maintain complete and accurate records of what patient information (and where) Defendant did and does store.

150.   Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its patients' relationship, in particular, to keep secure the Private Information of its patients.

151.   Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discovery, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

152.   Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Private Information.

153.   Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

154.   Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic PHI Defendant created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1).

CLASS ACTION COMPLAINT

155.  Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1).

156.  Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1).

157.  Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii).

158.  Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2).

159.  Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3).

160.  Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(94).

161.  Defendant breached its fiduciary duties owed to Plaintiff and Class Members by impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502, et seq.

162.   Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to effectively train all Members of its workforce (including independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the Members of its workforce to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5).

163.   Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

164.   Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Private Information.

165.   As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of

CLASS ACTION COMPLAINT

Plaintiff and Class Members; and (vii) the diminished value of Defendant's services they received.

166.   As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

<u>**SEVENTH COUNT**</u>

**Violation of the California Confidentiality of Medical Information Act**

**(Cal. Civ. Code § 56, *et seq.*)**

**(On Behalf of Plaintiff and All Class Members)**

167.   Plaintiff repeats and re-alleges each and every factual allegation contained in Paragraphs 1 through 84 as if fully set forth herein.

168.   Section 56.10(a) of the California Civil Code provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization."

169.   At all relevant times, Defendant was a health care provider because it had the "purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis or treatment of the individual." Cal. Civ. Code 6 § 56.06(a).

170.   At all relevant times. Defendant collected, stored, managed, and transmitted Plaintiff's and Class Members' PII/PHI.

171.   The CMIA requires Defendant to implement and maintain standards of confidentiality with respect to all individually identifiable PHI disclosed to them and maintained by them. Specifically, California Civil Code § 56.10(a) prohibits Defendant from disclosing Plaintiff's and Class Members' PHI without first obtaining their authorization to do so.

172.   Section 56.11 of the California Civil Code specifies the manner in which authorization must be obtained before PHI is released. Defendant, however, failed to obtain any authorization - let alone, proper authorization - from Plaintiff and Class Members before releasing and disclosing their PHI. Defendant also failed to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs and Class Members' PHI as required by California law. As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care, Plaintiff's and Class Members' PHI was disclosed. By disclosing Plaintiff's and Class Members' PHI without their written authorization. Defendant violated California Civil Code § 56, *et seq*., and their legal duty to protect the confidentiality of such information.

173.   Defendant also violated Sections 56.06 and 56.101 of the California CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential PHI. As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff's and Class Members' confidential PHI was viewed, released and disclosed without their authorization by unauthorized persons.

174.   As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violation of the CMIA, Plaintiff and Class Members also are entitled to (i) injunctive relief, (ii) punitive damages of up to $3,000 per Plaintiff and each Class Member, and (iii) attorneys' fees, litigation expenses and court costs under California Civil Code § 56.35.

## **EIGHTH COUNT**

### **Violation of the California Unfair Competition Law**

### **(Cal Bus. & Prof. Code § 17200, *et seq*.)**

**(On Behalf of Plaintiff and All Class Members)**

175.   Plaintiff repeats and re-alleges each and every factual allegation contained in Paragraphs 1 through 84 as if fully set forth herein.

176.   The California Unfair Competition Law, Cal Bus. & Prof. Code § 17200, *et seq.* prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law. By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the UCL.

177.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

178.   In the course of conducting its business, Defendant committed "unlawful" business practices by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class Members' PII/PHI, and violating the statutory and common law alleged herein in the process, including, *inter alia*, the California CMIA, the California CRA, the California CCPA, the Federal Trade Commission Act, HIPAA, and the Gramm- Leach-Bliley Act. Plaintiff and Class Members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. Defendant's above described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

179.   Defendant also violated the UCL by failing to timely notify Plaintiff and Class Members regarding the unauthorized release and disclosure of their PII/PHI. If Plaintiff and Class Members had been notified in an appropriate fashion, they could have taken precautions to safeguard and protect their PII/PHI, medical information, and identities.

180.   Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair" business acts and practices in violation of the UCL in that Defendant's wrongful conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

181.   The UCL also prohibits any "fraudulent" business act or practice, above-described claims, nondisclosures and misleading statements were false, misleading and likely to deceive the consuming public in violation of the UCL.

182.   By the acts and conduct alleged herein, Defendant committed fraudulent acts and practices by:

a.   failure to maintain adequate computer systems and data security practices to safeguard Private Information;

b.   failure to disclose that its computer systems and data security practices were inadequate to safeguard Private Information from theft;

c.   continued gathering and storage of PHI, PII, and other personal information after Defendant knew or should have known of the security vulnerabilities of its computer systems that were exploited in the Data Breach;

d.   making and using false promises, set out in the PIH Privacy Notice, about the privacy and security of PHI, PII, and the Private Information of Plaintiff and Class Members, and;

e.   continued gathering and storage of PHI, PII, and other personal information after Defendant knew or should have known of the Data

Breach and before Defendant allegedly remediated the data security incident.

183.   Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, Plaintiff and Class Members into purchasing Defendant's medical services when those medical services were misrepresented and otherwise did not perform as advertised as to the confidentiality, safety, and security of PII and PHI.

184.   The foregoing fraudulent acts and practices are deceptive and misleading in a material way because they fundamentally misrepresent the character of the medical services provided, specifically as to the safety and security of PHI, PII, and other personal and private information, to induce consumers to purchase the same.

185.   Defendant's unconscionable commercial practices, false promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable consumers, including Plaintiff and Members of the Class, would attach importance to in making their purchasing decisions or conducting themselves regarding the purchase of medical services from Defendant.

186.   Plaintiff and Members of the Class relied upon the representations in the Privacy Notice, a copy of which (upon information and belief) was provided to Plaintiff and Members of the Class prior to the receipt of any medical services from Defendant.

187.   As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the UCL, Plaintiff and Class Members have suffered (and  will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and medical fraud – risks justifying expenditures for protective and remedial services for which she is

CLASS ACTION COMPLAINT

entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of her PII/PHI, (iv) statutory damages under the California CMIA, (v) deprivation of the value of her PII/PHI, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring her credit, monitoring her financial accounts, and mitigating her damages.

188.   Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of herself, Class Members, and the general public, also seeks restitution and an injunction prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to modify its corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the PII/PHI entrusted to it, as well as all other relief the Court deems appropriate, consistent with Cal. Bus. & Prof. Code § 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a)   For an Order certifying this action as a Class action and appointing Plaintiff and her counsel to represent the Class;

b)   For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c)   For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII and PHI compromised during the Data Breach;

CLASS ACTION COMPLAINT

d)      For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e)      Ordering Defendant to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

f)      For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g)      For an award of punitive damages, as allowable by law;

h)      For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i)      Pre- and post-judgment interest on any amounts awarded; and

j)      Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.


Dated: February 20, 2020                    Respectfully submitted,


                                            /s/ *Danielle L. Perry*
                                            Danielle L. Perry (SBN 292120)
                                            **WHITFIELD BRYSON & MASON, LLP**
                                            5101 Wisconsin Avenue NW, Suite 305
                                            Washington, DC 20016
                                            Tel.: (202) 429-2290
                                            Fax: (202) 429-2294
                                            gmason@wbmllp.com
                                            dperry@wbmllp.com
                                            dlietz@wbmllp.com

CLASS ACTION COMPLAINT

Alex R. Straus (SBN 321366)
16748 McCormick Street
Los Angeles, CA 91436
Phone: (310) 450-9689
Fax: (310) 496-3176
alex@wbmllp.com

Gary M. Klinger*
**KOZONIS & KLINGER, LTD.**
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Tel.: (312) 283-3814
Fax: (773) 496-8617
gklinger@kozonislaw.com

*pro hac vice to be filed*

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT